IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RODREL DEUNTA MATHIS,          )<br>    Plaintiff,                              )<br>                                                   )<br>v.                                                 )<br>                                                   )<br>DEPUTY BURKE, *et al.*,              )<br>    Defendants.                         ) | Civil Action No. 7:22-cv-00223<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Rodrel Deunta Mathis, an inmate at the Roanoke City Jail ("the Jail"), and proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. His complaint names five defendants: Deputy Burke, Naph Care Inc., Head Nurse Stephanie Walsh, Sheriff Antonio Hash, and the Roanoke City Jail Nurse Department. The complaint is now before the court for review pursuant to 28 U.S.C. § 1915A(a) and 42 U.S.C. § 1997e(c)(1).

I.  BACKGROUND

The allegations in Mathis's complaint stem from his exposure to another inmate with hepatitis A, and the steps taken by the Jail's personnel before and afterward, which he alleges were constitutionally inadequate. He alleges that he was in the same cell and pod with inmate Tolsen for almost one month. On some unspecified date, Tolsen told the "floor deputies" that he did not feel well and that he wanted to see the nurse. (Compl. 3, Dkt. No. 1.) According to Mathis, Tolsen had been feeling sick for about a week before he was tested for hepatitis A, (*id.* at 4), although Mathis does not state when during that week Tolsen asked to see a nurse.

On April 11, 2022, Nurse Tanya was making rounds delivering medication, and Tolsen told her that he thought he had hepatitis and that he wanted to get tested. Although Tanya told him nothing was wrong with him because his eyes were not yellow, ten minutes later Tolsen was called on the speaker to go see the nurse. Tolsen returned a few minutes later and told other

inmates that he had had blood drawn. "Minutes later" they called Tolsen again and told him to gather his belongings so that he could be removed from the pod. (*Id.* at 3.)

Deputy Burke came to get him and asked everybody to clear out of the cell with Tolsen while he gathered his things. Later, when Deputy Burke was gathering trays, Mathis and the two other inmates who had shared the cell with Tolsen asked Burke whether they needed to worry about Tolsen testing positive for hepatitis. In response, Burke "lied" to them and told them that Tolsen was removed because he was disrespectful to the nurses who tested him. In fact, however, Mathis believes that Tolsen had tested positive for hepatitis. (*Id.* at 3–4.)

That same day, Mathis was concerned about his safety and filed a grievance asking if Tolsen had tested positive for hepatitis. Head Nurse Stephanie Walsh wrote back and said she was closing the grievance because she had talked to the Virginia Department of Health ("VDH") and VDH officials were to come the following week. (*Id.* at 4.)

At 8:00 a.m. on April 13, 2022, deputies came to the pod with cleaning supplies and clippers and told Mathis and other inmates that they were on medical quarantine. At about 12:45 the same day, Walsh came and talked to the quarantined inmates and told them that they had been exposed to hepatitis A. She advised that she had been talking with VDH officials about coming to the Jail to give vaccines, and she also gave the inmates instructions about the need to keep their "hands clean, and etc." because of the nature of hepatitis A. (*Id.*)

Mathis complains that VDH did not come to the Jail to administer vaccines until April 19, 2022, despite Walsh telling them VDH would be coming that day. (*Id.* at 4–5.) Based on this, he asserts that Walsh lied to them. He also complains that he was not moved out of the pod for it to be sanitized and cleaned, as Jail personnel had done when there was a prior incident of hepatitis A exposure.

Although Mathis does not allege that he ever contracted hepatitis A or ever felt sick, he alleges that he was at risk because he "has the trait of sickle cell" and high blood pressure. Undercutting his claim, though, he also admits that he received a hepatitis A vaccine three and a half months prior to Tolsen's testing. Nonetheless, he believes unspecified Jail personnel are not following protocols, because inmates are supposed to be quarantined for 15 days when they first come to the Jail, and Tolsen never should have made it to the second floor population if he had hepatitis A. (*Id.* at 5; *id.* at 6 (referencing his high blood pressure).)

At the end of his complaint, Mathis lists what he believes each defendant did that violated his rights. As to Deputy Burke, he "lied" by telling the inmates that Tolsen was leaving the pod not because of his health, but because he had been disrespectful to the nurses. (*Id.* at 6.) As to Naph Care, Inc., Mathis alleges that they "are not giving out safety protocols" to prevent the spread of hepatitis. (*Id.*) He faults Sheriff Hash for "not putting in good effort to make sure his workers and nurses are following safety protocols" with regard to hepatitis A. (*Id.*) He asserts that Hash needs to "make sure" that the quarantine period considers "everything that can be contagious" before releasing inmates to the general population. (*Id.*)

Mathis alleges that Head Nurse Stephanie Walsh lied to Mathis and other inmates by telling them that VDH would be coming to give vaccines on April 13, 2022, when in fact VDH did not come until April 19. He also alleges, although he provides no details or facts in support, that "she did not follow safety protocols guidelines." (*Id.* at 7.) He bases this on the fact that hepatitis A "keeps flowing through [the] general population" when people enter the Jail. He accuses her of continuing to put his life at risk. For relief, he asks for $ 1 million in damages and offers to settle for $100,000. (*Id.* at 2.)

## II.  DISCUSSION

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in

3

a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 42 U.S.C. § 1997e(c) (requiring same review as to any § 1983 action filed by a prisoner "with respect to prison conditions"). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted).

Applying those standards here, the court concludes that Mathis's complaint must be dismissed for several reasons. First, his claims against the "Roanoke City Jail Nurse Department" fail because that is not an entity capable of being sued. Moreover, as to both that defendant and defendant Naph Care, Inc.—which the court presumes is a provider of medical services at the Jail—Mathis's claim fails to identify any person whose conduct violated his constitutional rights. This failure is important because liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting

4

*Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). These entities are not "persons" under § 1983 and must be denied.

For like reasons, Mathis's claims against Sheriff Hash fail. Mathis faults Hash for the quarantine policy and for failing to contain hepatitis A outbreaks, but that appears to be solely because Hash is the official in charge of the Jail's operations, which is an official-capacity claim. A sheriff in Virginia, however, is an "arm of the State" for purposes of the Eleventh Amendment and is entitled to Eleventh Amendment immunity from suit. *Bland v. Roberts*, 730 F.3d 368, 390–91 (4th Cir. 2013); *see also Cadmus v. Williamson*, No. 5:15-cv-045, 2016 WL 1047087, at *4–*5 (W.D. Va. Mar. 10, 2016) (dismissing with prejudice claims for money damages against the sheriff in his official capacity). "[A]n entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983." *Howlett v. Rose*, 496 U.S. 356, 365 (1990). Thus, Mathis's § 1983 claims seeking money damages against the sheriff in his official capacity are subject to dismissal.[1]

Similarly, to the extent that Mathis is naming Hash simply because he is a supervisor with authority over the Jail, he has failed to allege facts to establish supervisory liability. To establish supervisory liability, Mathis must allege facts sufficient to show (1) that Hash "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that Hash's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*,

---

[1] Mathis has not identified any interactions with Hash so as to hold him liable in his individual capacity. He also has not alleged that Hash was subjectively aware of a risk of serious harm to Mathis, but nonetheless ignored that risk, so as to state an Eighth Amendment claim.

13 F.3d 791, 799 (4th Cir. 1994)).  The facts alleged by Mathis do not come close to plausibly alleging those three elements.  Among other failures, he fails to allege or present any evidence that Sheriff Hash had actual knowledge of the facts underlying his claims or of any constitutional violations by staff, or constructive knowledge based on such occurrences being widespread.  Moreover, as discussed next, there have not been any underlying constitutional violations by staff, which also dooms any supervisory liability claim.  For these reasons, any attempt to hold Sheriff Hash liable on a supervisory liability theory fails.

That leaves defendants Burke and the head nurse, Stephanie Walsh.  The claims against them must be analyzed as claims of unconstitutional prison conditions under the Eighth Amendment.  As discussed next, though, Mathis has failed to allege facts sufficient to entitle him to relief on those claims.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  To plead such a claim, a prisoner must set forth facts showing that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).  To satisfy the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions.  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).  To satisfy the second, the prisoner must show that a defendant was *actually* aware of a serious risk of significant harm to the prisoner and disregarded it.  *Id.*

As noted, Mathis does not identify that he ever contracted hepatitis A, so he suffered no physical injury as a result of violation.  In fact, he notes that he was vaccinated against the disease about three months before these events occurred.  But courts have recognized that the

risk of exposure to a serious infectious disease can satisfy the first element of an Eighth Amendment conditions claim. See *Hutto v. Finney*, 427 U.S. 678 (1978); *Helling v. McKinney*, 509 U.S. 25, 35 (1993). And lower courts have concluded that serious communicable diseases can present a substantial risk of serious harm to inmates. *See, e.g.*, *Beagle v. Schwarzenegger*, 107 F. Supp. 3d 1056, 1069 (E.D. Cal. 2014) (valley fever); *Hemphill v. Rogers*, No. CIV.A.07-2162JAG, 2008 WL 2668952, at *11 (D.N.J. June 27, 2008) (scabies); *Kimble v. Tennis*, No. CIV. 4:CV-05-1871, 2006 WL 1548950, at *4 (M.D. Pa. June 5, 2006) (methicillin-resistant staphylococcus aureus ("MRSA")); *Jeffries v. Block*, 940 F. Supp. 1509, 1514 (C.D. Cal. 1996) (tuberculosis).

Assuming for purposes of this opinion that Mathis has adequately alleged the objective component of his claim, Mathis fails to allege facts sufficient to establish deliberate indifference. Burke allegedly "lied" to Mathis about why Tolsen was removed, but this, without more, does not establish that he was deliberately indifferent to any risk to Mathis.[2] Indeed, Walsh contacted VDOC and spoke to the inmates less than 48 hours after Burke's supposed "lie," so steps were taken quickly to combat the spread of the disease. Mathis also fails to identify any action that Burke should have taken to mitigate any risk to Mathis. Instead, Burke's alleged failure to tell the truth was largely inconsequential, as it appears that Mathis already believed Tolsen had tested positive and queried the medical department about it the very same day.

As to Walsh, she came to the pod less than two full days after Tolsen was removed, and she explained to the inmates how to prevent the spread of hepatitis A. This instruction was an important step to prevent transmission of hepatitis A, in particular, because unlike diseases spread by airborne particles, hepatitis A "is known only to be transmitted to humans by fecal-oral

---

[2] Although Mathis insists that Burke "lied," it is likely that Burke had an obligation, or that the Jail at least had a policy, not to disclose an inmate's medical information to other inmates. Burke's telling the other inmates about Tolsen's test results would have violated any such policy.

7

route (that is, by ingestion of contaminated water or food products with fecal material containing the virus)." *Crocamo v. Hudson Cty. Corr. Ctr.*, No. CIV A 06-1441 PGS, 2007 WL 1175753, at *7 (D.N.J. Apr. 19, 2007). Thus, inmates' thorough washing of their hands and other steps to prevent ingestion of fecal material are particularly important in preventing the spread of the disease. Furthermore, as discussed next, Walsh also communicated with VDH, who had personnel come to the Jail to provide vaccines. In short, based on his own allegations, Mathis has not plausibly alleged facts to support that either Burke or Head Nurse Walsh knew of and disregarded an excessive risk to his health and safety, an "exacting standard." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Moreover, and significantly, Mathis's own allegations reflect that Jail officials took steps to prevent the spread of hepatitis A. For example, although he claims that the quarantine was not effective, he admits that inmates are subject to a medical quarantine upon admission to the Jail. He also notes that he and other inmates were quarantined after their exposure to hepatitis A. So, the Jail does utilize a quarantine. Mathis's allegations further show that the same day that Tolsen was diagnosed, Tolsen was removed from the cell. Less than two days later, officials with cleaning materials came to the pod and the head nurse informed them of their exposure and gave them information about how to reduce the risk of transmission. Less than one week after that, VDH officials arrived and offered vaccines to inmates who needed it.

Taken in total, these measures by the Jail refute any finding of deliberate indifference on the part of the defendants. *See Baxley v. Jividen*, No. 3:18-1526, 2020 WL 1802935, at *6 (S.D. W. Va. Apr. 8, 2020) (noting, in context of denying preliminary injunction, that plaintiffs likely could not show deliberate indifference where defendants' actions showed that they had a plan in place to try to limit transmission of COVID-19). Given that Mathis's own allegations establish that defendants have taken steps to limit transmission of hepatitis A, responded quickly once

8

Tolsen was diagnosed, and also offered vaccines within one week, he has not shown that any defendant "disregarded" the risk of transmission.

Furthermore, Mathis has not alleged facts to show that any defendant—or anyone at the Jail—knew of a specific risk to him. And although he states that he was at risk because of high blood pressure and a "sickle cell trait," he also alleges that he had received a vaccine three months before. In the absence of a defendant's actual knowledge of a serious risk to Mathis's health or safety, he has failed to state an Eighth Amendment claim.

In short, prison officials are required to take reasonable measures to guard against any inmates' contraction of serious diseases, but the mere fact that Mathis had contact with an individual with hepatitis A does not support an Eighth Amendment claim. *See, e.g.*, *Toure v. Hott*, 458 F. Supp. 3d 387, 408 (E.D. Va. 2020) ("Plaintiff has not established deliberate indifference . . . simply because another inmate, who had been released from a COVID-19 quarantine, was assigned as his cellmate.").

For the foregoing reasons, Mathis's Eighth Amendment claims fail.

### III. CONCLUSION

For the foregoing reasons, Mathis's complaint is subject to dismissal. An appropriate order will be entered.

Entered: July 1, 2022.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge